1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE CAMPOS SORIA, | ) | 1:12-cv-00424-SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 3, 9.)

# FACTUAL BACKGROUND

Plaintiff was born in 1956, and is unable to communicate in English. (Administrative Record ("AR") 31.) On September 14 and October 10, 2006, Plaintiff filed applications for SSI and DIB, respectively, alleging disability due to a back condition and right leg pain. (AR 202.)

## A.    Relevant Medical Evidence

Plaintiff sustained a work-related back injury in late 2003 and reported pain radiating down his right leg, gluteus, and heel during work activities in December 2003. Plaintiff took several weeks off from work, sought treatment with a chiropractor, and was provided eipdural injections for low-back-pain and sciatica. (AR 27, 268, 296-97, 319.) In connection with a workers' compensation claim filed by Plaintiff, an osteopathic orthopedic specialist, Paul E. Wakim, D.O., examined Plaintiff on November 24, 2004. (AR 315 (discussing November 24, 2004, examination, although examination report is not included in the record.) Dr. Wakim reported that Plaintiff's medical findings showed narrowing of the L5-S1 disc and slight spur formation. (AR 315.) Plaintiff was diagnosed with degenerative disc disease at L4-L5 and L5-S1 lumbar strain, and Dr. Wakim noted that the minimal disc findings on Plaintiff at age 48 was within normal limits. Dr. Wakim imposed a work restriction of "no very heavy lifting." (AR 315.)

On March 18, 2005, Plaintiff sought treatment with Harold Black, D.C. (AR 286.) On March 23, 2005, Plaintiff underwent a magnetic resonance imaging scan ("MRI") of his lumbar spine. (AR 235.) The radiologist listed an impression of "some hyperlordosis"[2] and disc desiccation/dehydration. (AR 325.)[3]

On March 25, 2005, Dr. Black referred Plaintiff to S. Gulaya, M.D., a neurologist. (AR 296-306; 367-71.) Plaintiff complained of constant, sharp low-back pain that increased with prolonged walking, standing, and sitting and radiated down his leg to his toes. (AR 297, 368.) Plaintiff

---

[2] Hyperlordosis in an abnormally increased concavity in the curvature of the lumbar spinal column as viewed from the side. *Dorland's Illustrated Medical Dictionary* 904, 1090 (31st ed. 2007).

[3] The second page of the report is missing from the record. (*See* AR 325, noting report is continued on Page 2.)

experienced occasional numbness and tingling from the right knee to his toes.  (AR 297, 368.)  Dr. Gulaya found slight to moderate tenderness of the lumbar spine on examination, slight to moderate paraspinal tenderness, and slight sciatic notch tenderness.  (AR 298, 369.)  Dr. Gulaya also noted that the straight leg raising test was positive at 70 degrees.[4]  (AR 298, 369.)  Dr. Gulaya recommended that Plaintiff continue with conservative chiropractic treatment, prescribed Naproxsyn, Robaxin, and Darvocet, noted that nerve conduction and EMG studies would be performed in four weeks, and indicated that Plaintiff would follow up in four weeks.  (AR 299, 370.)

On April 27, 2005, Dr. Gulaya interpreted nerve conduction study results of Plaintiff's legs showing normal findings.  (AR 301-05.)  Dr. Gulaya also administered an electromyogram ("EMG") study in April 2005, which showed Plaintiff's lower-left leg was normal, but indicated nerve root irritation at the site of Plaintiff's protruding discs.  (AR 306.)

Also on April 27, 2005, Dr. Black provided a report for purposes of Plaintiff's workers' compensation claim.  (AR 268-75.)  Dr. Black opined that Plaintiff should be precluded from substantial work on a prophylactic basis, contemplating that Plaintiff had lost 75 percent of his pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activities involving comparable physical effort.  (AR 273.)  Dr. Black indicated that the objective medical factors supporting his opinion included Plaintiff's decreased lumbar ranges of motion, a positive orthopedic examination, abnormal EMG of the right lower extremity with evidence of right L4-L5 and S1 nerve root irritation, and positive MRI findings indicating annular fissuring with 3-4mm broad-based posterior disc protrusion at L4-L5 and L5-S1 and 1-2 mm bulge of annulus fibrous of L3-L4 through L5-S1 discs.  (AR 273.)

On June 29, 2005, Dr. Wakim reevaluated Plaintiff.  Dr. Wakim disagreed with Dr. Black's April 27, 2005, assessment stating that Plaintiff has a 1 to 2 mm bulging disc, which meant that Plaintiff is a normal patient for his age.  (AR 320.)  Dr. Wakim noted that the medical findings are within the normal progression of the degeneration of the disc space, and the minimal bulging disc

---

[4] A straight leg raising test is performed during a physical examination to determine whether a patient with low back pain has an underlying herniated disc.  The straight leg raising test is positive if the patient experiences pain down the back of the leg when the leg is raised.

1  was a normal finding; thus the treatment provided by Dr. Black was unnecessary and outside the

2  scope of care.  (AR 320-21.)  Dr. Wakim indicated that the abnormalities noted by Dr. Gulaya on

3  Plaintiff's EMG test were inconsistent and inaccurate with any minimal bulging disc, and thus Dr.

4  Gulaya's findings appeared to be erroneous.  Dr. Wakim opined that Plaintiff was precluded from

5  very heavy lifting, and Plaintiff needed over-the-counter anti-inflammation medicine in the form of

6  Advil or Aleve as his only pharmaceutical treatment.  (AR 323.)  He also opined that Plaintiff should

7  perform walking exercises as well as extension exercises of the lower back and no physical therapy

8  or chiropractic care was necessary or indicated.  (AR 323.)

9       On September 7, 2005, Dr. Black reviewed Dr. Wakim's opinion, and refuted Dr. Wakim's

10  findings:

11  > I would like to point out[] Mr. Campos presented to my office due to ongoing and
    > increasing low back pain, which radiated into his lower extremities.  Dr. Wakim
12  > states Mr. Campos basically had normal examination findings on 11/25/0[4;]
    > however, when he presented to my office on 3/18/05, his objective findings were far
13  > from normal.  I would also like to point out that on 6/29/05[,] Dr. Wakim noted the
    > following examination findings 1) decreased lumbar flexion (by 27%),
14  > (2) hypoesthesia[5] following the right S1 nerve distribution, (3) positive SLR on the
    > right at 60 degrees.  These are all significant objective findings, which are anything
15  > but normal.

16  > . . .

17  > I would respectfully disagree with Dr. Wakim's opinions and conclusions.  Dr.
    > Wakim is overly simplifying Mr. Campos' current condition.  It is obvious that Mr.
18  > Campos continues to be symptomatic.  This is easily observed in Dr. Wakim's own
    > examination findings.  As noted above, Dr. Wakim found objective findings which
19  > indicate nerve root irritation.  Furthermore, Dr. Wakim's findings correlate perfectly
    > with the lumbar spine MRI and NCV/EMG studies done recently.  As noted in my
20  > permanent and stationary report, Mr. Campos had an abnormal EMG of the right
    > lower extremity with evidence of right L4-5 and S1 nerve root irritation.  The MRI
21  > revealed annular fissuring with 3-4 mm broad-based posterior disc protrusions at L4-
    > 5 and L5-S1.  These findings correlate with my examination findings noted in my
22  > permanent and stationary report, as well as with those examination findings noted by
    > Dr. Wakim in his most recent examination.

23  > . . .

24  > Dr. Wakim does not take note of the current MRI findings which revealed annular
25  > fissuring with 3-4 mm broad-based posterior disc protrusion at L4-5 and L5-S1.
    > These findings are not minimal, and certainly not normal.

26

27  ---

28  [5] Hypoesthesia is a partial loss of sensation or diminished sensibility. *Dorland's Illustrated Medical Dictionary* 914 (31st ed. 2007).

. . .

Dr. Wakim is completely and utterly contradicting himself. Dr. Wakim stated there were 'no reflex changes, no neurological deficits, and essentially negative leg raising,' however; I must point to pages 4 through 7 of Dr. Wakim's examination findings. As noted above, his exam revealed the following [(1)] decreased lumbar flexion (by 27%), (2) hypoesthesia following the right S1 nerve distribution; (3) positive SLR on the right at 60 degrees.  These are all significant objective findings, which are anything but normal.  Even with his own examination findings, Dr. Wakim contradicts himself and states that everything is normal.  Contrary to that belief, the objective findings are not normal.  Based on these findings, an MRI and NCV/EMG studies were performed, which, as noted above, correlate with the examination findings Dr. Wakim found in his last examination, as well as with those noted in my permanent and stationary report.  As a result, the MRI and NCV/EMG tests were necessary, and I would not [sic] consider them accurate since they clinically support the objective examination findings.

. . .

It is quite evident Mr. Campos is an injured worker who was in great need of further care.  I provided this care.  Mr. Campos was seen for approximately 6 weeks and his care was necessary and reasonable.  The objective findings speak for themselves. Simply put, Mr. Campos is an injured worker who will require greater work restrictions to avoid further injurious effects which might otherwise lead to further pain and disability.  It is evident that a 'very heavy lifting' restriction will not be sufficient . . . .

(AR 290-92.)

On February 7, 2007, Plaintiff was examined by State agency physician Juliane Tran, M.D. (AR 331-34.)  Plaintiff indicated that as a result of a work injury, he suffers from pain in his back that radiates to his right leg.  (AR 331.)  He stated that the epidural injections did not provide adequate pain relief, but chiropractic therapy and adjustments provided him with pain relief for a few hours.  (AR 331.)  His back pain is aggravated with prolonged sitting, standing, walking, bending over, and lifting.  (AR 331.)  He stated he could stand no more than 25 minutes at a time, walk no more than three blocks at a time, and sit no more than 25 minutes at a time.  (AR 331.)  Although medication helped relieve the pain to some degree, on an average day the pain is 8 out of 10 with medication and 10 out of 10 without medication.  (AR 31.)

On examination, Dr. Tran noted that Plaintiff's straight leg raising test was "normal." (AR 333.) Plaintiff's toe-heel walking was slightly antalgic,[6] and Plaintiff complained of pain in his right leg. (AR 332.) Plaintiff's straight-away gait, heel walking, and tandem gait were all normal. (AR 332.) The Romberg test was normal,[7] even where Plaintiff's feet were in tandem position. (AR 332.) Dr. Tran's impression was back pain with possible combination of discogenic pain, lumbar degenerative disc disease, and lumbar facet joint pain.[8] (AR 333.) She also stated that

> [a]lthough the claimant has subjective symptoms or radicular symptoms, the sensory examination is nonspecific for a specific dermatome.[8] There is no evidence of an active lumbar radiculopathy at this time. He has a negative straight leg raise test. His reflexes of the lower extremities are symmetrical. He has good strength throughout the lower extremity. He has some decreased range of motion.

(AR 334.)

As to Plaintiff's functional abilities, Dr. Tran opined as follows:

> His effort during the examination is uncertain but based on this examination findings today, he would be restricted with activities involving lifting no more than 50 pounds occasionally, no more than 25 pounds frequently. He may be restricted with activities involving standing no more than six hours a day, frequent bending, stooping, and crouching.

> There is no restriction with fingering, grasping, overhead reaching, climbing, balancing, and working at heights. No visual restrictions. No environmental restrictions.

> He does not need to alternate between sitting and standing. He does not need to use an assistive device.

(AR 334.)

---

[6] Antalgic means a posture or a gait assumed to lessen pain. *Dorland's Illustrated Medical Dictionary* 98 (31st ed. 2007).

[7] The Romberg test is designed to demonstrate a loss of postural control. When a patient sways or falls with his eyes closed while standing with feet together, it is considered to be a positive. A positive Romberg's test has been linked to causes of proprioceptive deficits, tabes dorsalis, and sensory neuropathies. *See* Findlay, Birender, Balain, Jayesh M. Trivedi, and David C. Jaffray, *Does Walking Change the Rombeg Sign?* 18(10) Eur Spine Journal , 1528-1531 (October 2009).

[8] Discogenic means caused by derangement of an intervertebral disc. *Dorland's Illustrated Medical Dictionary* 534 (31st ed. 2007).

[8] Dermatome refers to an area of skin supplied with afferent nerve fibers by a single posterior spinal root. *Dorland's Illustrated Medical Dictionary* 504 (31st ed. 2007).

On March 16, 2007, Plaintiff's records were reviewed by State agency consultant M.O. Nawar, M.D. Dr. Nawar opined that Plaintiff could occasionally lift and carry 50 pounds, could frequently lift or carry 25 pounds; stand or walk about six hours in an eight-hour day; sit for a total of about six hours in an eight-hour day; and had no limitations for climbing, balancing, stooping, kneeling, crouching, or crawling. (AR 336-37.)

On August 1, 2007, a State agency consultative physician, A. M. Khong, M.D., reviewed Plaintiff's medical records and opined that Plaintiff was able to perform work at a medium exertional level. (AR 373-79.) Dr. Khong also noted that the medical evidence was consistent with Dr. Wakim's opinion that Plaintiff should be restricted from very heavy lifting. (AR 379.)

On August 23, 2007, Plaintiff underwent an MRI of his lumbar spine. (AR 407.) The radiologist indicated the following impression:

1.   3 mm disc protrusion noted at L5-S1, not causing significant thecal SAC indentation.

2.   3 mm posterior disc bulge noted at L4-L5, broad-based generalized annual nature, bulging into the exit zones of the neutral foramina bilaterally, left-greater-than-right.

3.   Borderline stenosis noted at L4-L5 and L5-S1.

(AR 407-08.)

On May 5, 2008, the California Department of Rehabilitation in Bakersfield, California, compiled a Vocational Evaluation Report. (AR 443-52.) The report was completed by Elpidio Rodarte, M.S., and Craig Foster, Certified Vocational Evaluator. (AR 452.) The Vocational Evaluation Report indicated that Plaintiff did not demonstrate an ability to engage in competitive employment due to the following:

•   Physical Demonstrations:  the consumer did not demonstrate the physical tolerances, stamina, and endurance for competitive employment, as he generally reported moderate to severe pain levels, and lost a total of 19% of the participation time due to a combination of pain breaks, late arrivals, and early departures.

•   Worker Trait Demonstrations:  The consumer demonstrated positive worker traits for employment.  He was cordial in his demeanor, followed through with verbal instructions in Spanish, and took supervision well.  However[,] he did not demonstrate the worker traits of being consistent in his ability to sustain work activities on a full-time basis.

- Skill/Academic Demonstrations:  The consumer did not demonstrate the academic skills to benefit from a vocational training program, as most academic scores fell in the below average range.  His Spanish reading comprehension was measured at the 2.5 grade level, and math at the 5.0 grade level based on the Spanish TABE Easy tests.  As Mr. Campos is solely Spanish speaking he was not given an English comprehension test.

(AR 451.)

During 2008 and continuing in 2009, 2010, and 2011, Plaintiff was treated at the Pair & Marotta physical therapy center as prescribed by the Bakersfield Neuroscience & Spine Institute. (AR 479-97, 541, 580-609.)  In November 2008, after attending nine physical therapy sessions, the therapist provided an assessment:  "[v]ariable pain and dysfunction persists, severity decreased. Patient demonstrates improved mobility, progression [of] the therapeutic exercise regimen, and improved functional tolerance.  Controlled well under current regimen.  Good potential persists for continued progress."  (AR 489.)  On January 12, 2009, after six additional therapy sessions, the therapist provided the following assessment:  "[v]ariable pain and dysfunction persists.  Patient benefitting from therapy, duration of benefit variable."  (AR 487.)  Plaintiff also underwent an additional six sessions of physical therapy in June 2009.  (AR 479.)  Plaintiff reported that his back pain persisted with decreased severity, and that his pain increased proportional to activity.  (AR 480.) Objectively, the therapist noted that Plaintiff was "[t]runk hypo mobile all planes, grossly 25% normal.  Motor; Grossly intact, BLE.  Sensation: Grossly intact, light touch, BLE.  Functional; Impaired proportional to trunk motor and mobility demand."  (AR 480.)

On January 27, 2010, Luis Teopengo, M.D., completed a physical capacities questionnaire regarding Plaintiff's functional capacity.  (AR 539-40).  Dr. Teopengo opined that in an eight-hour workday, Plaintiff could (1) stand and walk zero to two hours at one time, and zero to two hours total during the day; and (2) sit zero to two hours at one time and zero to two hours during the day due to "disc bulge and spinal stenosis documented on MRI."  (AR 539.)  Dr. Teopengo also opined that Plaintiff was restricted from using his feet for repetitive movements as a result of sciatica due to a 2003 back injury.  (AR 539).  He opined that Plaintiff should never lift 10 pounds or more, and that Plaintiff should never climb, balance, stoop, kneel, crouch, crawl, or reach.  (AR 540.)  Dr.

8

Teopengo noted that Plaintiff was treated with narcotic analgesics that might affect his ability to work. (AR 540.)

During April 2011 physical therapy sessions, Plaintiff reported significantly decreased neck and back pain. Objective findings showed that in Plaintiff's cervical trunk, all planes were grossly 75% normal, and his motor abilities were intact. (AR 581.) The assessment showed that Plaintiff was "[m]uch improved." (AR 581.)[9]

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") . (AR 74-96.)

**1.    Hearing Testimony**

On April 21, 2010, ALJ Benjamin F. Parks held a hearing where Plaintiff, through the assistance of counsel, and a vocational expert ("VE") testified. (AR 42-69.) Plaintiff testified that he was 53 years old and had completed a fourth-grade education in Mexico. (AR 46.) Plaintiff became a U.S. citizen in 1986; he can read, speak, and understand "a little bit" of English. (AR 47.)

He last worked on December 15, 2003, as a painter, which he had been doing since 1988. He stated that he had not performed part-time work since 2003. The discs in his lower back were damaged, as well as his sciatic nerve which causes him to experience a lot of pain in his right leg. (AR 48.) In his right arm, he experiences numbness from the elbow down to his hand. (AR 48.) He reported struggling with depression, but he was unable to continue his treatment due to a lack of funds. (AR 48-49.)

Plaintiff indicated that on a typical day, he has difficulty sleeping. For example, if he experiences very intense pain, he is only able to sleep for an hour at a time. If the pain is not very intense, then he will sleep until about 3 a.m. (AR 51.) Once he awakes, he sits to watch television, and then he walks in his yard. His wife goes with him to do any shopping, and she performs the household cleaning and cooking. (AR 50.) He travels by car every three or four months to visit his

---

[9] The Appeals Council accepted additional medical evidence to the record in denying review of the ALJ's decision. (AR 4, 253-58, 579-612.)

children in the Los Angeles area, but he is required to stop during the trips to rest due to pain. (AR 51, 52.)  Plaintiff can only sit for 20 minutes before he must get up and change positions. (AR 53.)  Walking affects his pain, and it bothers him to walk on uneven ground.  (AR 53.)

The VE testified that Plaintiff's past work as a painter was very heavy[10] and unskilled. (AR 55-56.)  The ALJ posed several hypotheticals for the VE to consider.  In the first hypothetical, the VE was asked to consider a person of Plaintiff's age, education, and work history who retained the ability to perform medium work with a limited ability to speak, write, or understand English. The hypothetical person would also be limited to occasional stooping, crawling, and bending; occasional overhead reaching; and occasional pushing with the right arm. (AR 56.) The VE testified that such a person could perform work including that of an assembler or a bench production worker. (AR 57.)

In a second hypothetical, the VE considered a person of the same age, education, and work history as Plaintiff who retained the ability to perform light work with occasional stooping, crawling, and bending; occasional overhead reaching; occasional pushing and pulling with the right hand; and a limited ability to either speak, write, or understand English; and with a limited education.  (AR 57.) The VE testified that such a person would be able to perform work as an assembler or a bench production worker.  (AR 57.)

The VE considered a third hypothetical individual with all the same limitations as described in the second hypothetical but with an added limitation to sedentary work only.  (AR 57-58.)  The VE testified that such a person would be able to work as an assembler, as a bench production worker, and as a packager.  (AR 58.)

The VE considered a fourth hypothetical individual with all the same physical limitations as described in the second hypothetical, but who was also moderately impaired in the area of concentration, persistence, and pace such that this person would have difficulty with detailed and complex instructions 20 to 50 percent of the day because of pain, as well as a 40- to 50-percent limitation on simple, repetitive, tasks and maintaining a normal production schedule due to

---

[10] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

depression and pain.  (AR 59.)  The VE testified that a person limited in this manner would not be able to perform any work in the national economy.

### 2.    Medical Evidence Obtained Following the Hearing

Following the hearing, the ALJ requested that orthopedic surgeon Michael S. Gurvey, M.D., review the medical evidence and respond to several interrogatories posed by the ALJ.   In his response, Dr. Gurvey explained that Plaintiff's case is one "of primarily subjective complaints of low back pain" and noted that while Plaintiff has mild degenerative disc disease at L3-L4, L5-S1 and occasional examinations showed decreased sensation, other examinations show no changes, and three examinations show negative straight leg raises.  (AR 570.)  Based on his review of all the medical records, Dr. Gurvey opined that Plaintiff retained the ability to occasionally lift and/or carry between 21 to 50 pounds, and to frequently lift between 11 to 20 pounds.  (AR 562.)  He also opined that Plaintiff could, without interruption, sit up to four hours in an eight-hour day and could walk and/or stand between two and three hours in an eight-hour day.  In total, Plaintiff could be expected to sit, stand, and/or walk a total of six hours each in an eight-hour day.  (AR 563.)  Dr. Gurvey indicated that Plaintiff had no limitation in his ability to balance, stoop, kneel, and crouch; he could frequently crawl and climb stairs and ramps; but he could only occasionally climb ladders or scaffolds as a prophylactic measure.  (AR 565.)

### 3.    The ALJ's Decision

On June 18, 2010, the ALJ issued a decision, finding Plaintiff not disabled.  (AR 23-32.) Specifically, the ALJ found that Plaintiff (1) had engaged in substantial gainful activity since the alleged onset date of disability;[11] (2) has the following severe impairment:  low back pain with broad based disc protrusions and mild degenerative disease; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is unable to perform past relevant work; and (5) could perform other jobs in significant numbers in the national economy.  (AR 23-32.)

---

[11] The ALJ determined that, while Plaintiff testified that he last worked in December 2003, the record showed that he worked in early 2004, earning $3,665.25.  (AR 25.)  The ALJ found that the claimant had engaged in substantial gainful work activity since the alleged onset date, but nonetheless continued the sequential analysis.  (AR 25.)

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work with limitations to stooping, crawling, and bending no more than occasionally, reaching overhead no more than occasionally, pushing and pulling with the right, dominant arm no more than occasionally, and has a limited ability to speak, write, or understand English. (AR 26.)[12]

Plaintiff sought review of this decision before the Appeals Council. On January 23, 2012, the Appeals Council denied review. (AR 1-7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.    Plaintiff's Complaint**

On March 21, 2012, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff argues that the ALJ failed to properly evaluate the medical evidence and failed to properly consider Plaintiff's lay testimony. (Doc. 15.)

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

---

[12] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1    U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the

2    evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

3    not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

4    504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

5                                   **APPLICABLE LAW**

6         An individual is considered disabled for purposes of disability benefits if he or she is unable

7    to engage in any substantial, gainful activity by reason of any medically determinable physical or

8    mental impairment that can be expected to result in death or that has lasted, or can be expected to

9    last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

10   1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or

11   impairments must result from anatomical, physiological, or psychological abnormalities that are

12   demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

13   such severity that the claimant is not only unable to do her previous work, but cannot, considering

14   her age, education, and work experience, engage in any other kind of substantial, gainful work that

15   exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

16        The regulations provide that the ALJ must undertake a specific five-step sequential analysis

17   in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the

18   claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

19   If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

20   or a combination of impairments significantly limiting her from performing basic work activities.

21   *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the

22   claimant has a severe impairment or combination of impairments that meets or equals the

23   requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.*

24   §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

25   has sufficient residual functional capacity despite the impairment or various limitations to perform

26   her past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the

27   Commissioner to show that the claimant can perform other work that exists in significant numbers

28   in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or

13

1    not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v.*

2    *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

3                                          **DISCUSSION**

4    **A.    The ALJ's Consideration of the Medical Evidence**

5            **1.    The ALJ Properly Considered Dr. Teopengo's Opinion**

6            Plaintiff argues that Dr. Teopengo is a treating physician whose opinion the ALJ improperly

7    rejected because it was inconsistent with the lack of significant objective medical evidence of

8    limitations.  Plaintiff maintains this reasoning was not sufficiently specific because the ALJ failed

9    to articulate the specific objective findings that were not consistent with Dr. Teopengo's opinion,

10   specify how it was determined that Dr. Teopengo's findings were not well-supported by medically

11   acceptable clinical and laboratory diagnostic techniques, or outline any substantial evidence in the

12   record contradicting Dr. Teopengo's findings.  (Doc. 15, 11:19-12:21, 13:23-14:14.)

13          The Commissioner contends that the ALJ properly gave no weight to Dr. Teopengo's "check-

14   the-box" opinion because it was inconsistent with the objective findings and unsupported by the

15   record as a whole.  Specifically, while the ALJ noted that Plaintiff's MRI results indicated disc

16   protrusion and disc hydration, the ALJ also discussed that the latest MRI confirmed mild

17   degenerative disc disease and no evidence of a structural vertebral problem and no obvious

18   instability.  Further, Drs. Wakim, Tran, Nawar, Khong, and Gurvey each opined that Plaintiff could

19   perform work at a medium exertional level based on the same test results considered by Dr.

20   Teopengo, who found Plaintiff able to perform only work that was less than sedentary.  (Doc. 18,

21   11:24-12:19.)

22          The medical opinions of three types of medical sources are recognized in Social Security

23   cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat

24   the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

25   (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a

26   treating physician's opinion should be accorded more weight than opinions of doctors who did not

27   treat the claimant, and an examining physician's opinion is entitled to greater weight than a

28   non-examining physician's opinion.  *Id.*  Where a treating or examining physician's opinion is

                                                 14

uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

In *Embrey v. Bowen*, three treating physicians and one consulting physician determined that Embrey was disabled. 849 F.2d 418, 421 (9th Cir. 1988). The ALJ nonetheless rejected all of these opinions stating that they were not supported by sufficient objective findings and were contrary to the preponderant conclusions mandated by the objective findings. *Id.* The ALJ then noted that the "duration of the claimant's stress treadmill testing and relative lack of positive findings, the results of other laboratory and x-ray testing, the objective observations of the physicians of record, all preponderate toward a finding that the claimant has never lost the residual functional capacity for light work . . . . " *Id.* The Ninth Circuit held this discussion lacked the required level of specificity, and was essentially just a collection of conclusions rather than an analysis of the evidence.

This case is distinguishable from *Embrey*. Here, the majority of physicians who examined or reviewed Plaintiff's medical records concur that Plaintiff can perform work up to the medium exertional level. (AR 313-24 (Dr. Wakim, examining physician); 331-34 (Dr. Tran, examining physician); AR 335-41 (Dr. Nawar, non-examining physician); AR 373-79 (Dr. Khong, non-examining physician); 562-71 (Dr. Gurvey, non-examining physician).) Further, the ALJ rejected the opinion of Dr. Teopengo following a full, detailed, and interpretive summary of the objective evidence relating to Plaintiff's lower back condition.

The ALJ discussed the examination findings of Dr. Tran who took x-rays showing only possible mild degenerative changes in Plaintiff's lower lumbar spine. (AR 28, 330.) The ALJ discussed that, while Plaintiff reported severe back spasm and burning pain radiating to the right leg, and right leg and  numbness that was aggravated by standing, walking, sitting, bending, and lifting,

Plaintiff was nonetheless able to tolerate sitting, got on and off Dr. Tran's exam table without difficulty, and donned and doffed his socks and shoes without difficulty or assistance. (AR 28, 332.) The ALJ noted that while Plaintiff had some sacroiliac tenderness and complained of pain on toe-heel walking, he had a normal tandem and straight away gait, was negative on a straight leg raising test, and did not need an assistive device. (AR 28-29, 332-33.) Further, Dr. Tran found Plaintiff's decreased sensation to pinprick on the lower right leg was diffuse and not in a specific nerve or dermatome pattern. (AR 29, 333.) Dr. Tran indicated that without a specific dermatome and no evidence of an active lumbar radiculopathy, Plaintiff could be expected to perform medium work, standing no more than six hours in an eight-hour day. (AR 29, 334.) The ALJ also noted that both the State agency consultative physicians, Drs. Nawar and Khong, affirmed Dr. Tran's opinion. (AR 29, 335-39, 373-79.)

The ALJ considered that Plaintiff felt better following a course of physical therapy in 2008, had a normal examination with full range of motion in December 2008, and in 2009, while Plaintiff reported ongoing radiating pain, an October 2009 examination showed normal power in the upper and lower extremities bilaterally, and only some decreased sensation in the right L4-5 dermatome. A follow-up MRI in October 2009 showed only mild lower lumbar spondylosis from L3-4 down and mild degenerative canal stenosis from L4-5 down. (AR 28, 545.)  Concurrent x-rays showed only mild two level degenerative disc disease at L3-4 and L4-5 with no evidence of spondylolisthesis or instability. (AR 28, 546.) Plaintiff was prescribed only a lumbar brace at that time. (AR 28, 536.)

The ALJ considered that Plaintiff's nerve conduction studies in February 2010 were normal (AR 541) and examinations showed no evidence of radiculopathy and normal muscle strength, tone, station, and gait. (AR 28, 578.)

Finally, the ALJ discussed Dr. Gurvey's review of Plaintiff's medical records and his opinion that Plaintiff's records show primarily subjective complaints of low back pain. While there was mild degenerative lumbar disease with some notes of positive straight leg raises, Plaintiff had only occasional, inconsistent signs of decreased sensation in an L4-5 distribution and there was no indication for surgery or invasive procedures. (AR 30, 561-67.)

1    Because the ALJ undertook a thorough discussion of the objective medical evidence and

2    repeatedly indicated how the objective evidence pointed to more mild conditions, the ALJ's ultimate

3    rejection of Dr. Teopengo opinion as inconsistent with the lack of objective medical findings is

4    sufficiently specific.   Moreover, a lack of supporting objective evidence is a specific and legitimate

5    reason for rejecting a treating physician's opinion.   *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

6    1190, 1195 (9th Cir. 2004).   For these reasons, the ALJ provided a specific and legitimate reason to

7    reject Dr. Teopengo's opinion.

8         **2.        The ALJ Gave a Specific and German Reason to Reject Dr. Black's Opinion**

9         Plaintiff argues that Dr. Black is a treating physician, and his opinion should have been given

10   controlling weight by the ALJ.   (Doc. 15, 11:20-12:21.)   However, Dr. Black is a chiropractor and

11   as such, he is not an "acceptable medical source" but is considered an "other source."   20 C.F.R.

12   §§ 404.1513(d)(1), 416.913(d)(1) (other sources include "nurse-practitioners, physicians' assistants,

13   natropaths, chiropractors, audiologists, and therapists").   Social Security Ruling 06-03p explains that

14   "only 'acceptable medical sources' can give us medical opinions" pursuant to 20 C.F.R.

15   §§ 404.1513(a) and 416.913(a).   Further, "only 'acceptable medical sources' can be considered

16   treating sources, as defined in 20 [C.F.R. §] 404.1502 and [§] 416.902, whose opinions may be

17   entitled to controlling weight."   2006 WL 2329939.   Because "other sources" are treated like lay

18   witnesses, the ALJ may disregard their opinions by providing a "germane reason."   *Turner v.*

19   *Comm'r*, 613 F.3d 1217, 1224 (9th Cir. 2010); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

20        While Plaintiff asserts that the ALJ was required to state specific and legitimate reasons to

21   reject Dr. Black's opinion as a treating physician, the applicable regulations and the controlling

22   caselaw require the ALJ to state specific and germane reasons to discount Dr. Black's opinion.   Here,

23   the ALJ determined that Dr. Black's opinion was inconsistent with the lack of objective evidence

24   documenting severe limitations and afforded the opinion no weight.   (AR 28.)   After making this

25   finding, the ALJ fully discussed and interpreted the relevant objective findings, as indicated above.

26   (AR 28.)   Given the ALJ's thorough discussion of the objective medical evidence, the finding that

27   Dr. Black's opinion was inconsistent with the lack of objective evidence was a specific and germane

28   reason to reject his opinion.   *See Arellano v. Astrue*, No. ED CV 09-1186-PJW, 2010 WL 2991145,

1   at *5 (C.D. Cal. July 26, 2010) (rejection of chiropractor's opinion as unsupported by the weight of

2   the evidence of record was a legally sufficient, germane reason).

3       **3.      The ALJ Stated Sufficient Reasons to Give Less Weight to the Vocational**
        **Report**

4

5       Plaintiff was evaluated by Elpidio Rodarte, M.S. and Craig Foster, C.V.E. who determined

6   that Plaintiff was unable to engage in gainful employment.  (AR 443-52.)  Plaintiff argues that the

7   ALJ erred in ascribing little weight to the vocational report.  Plaintiff contends that the ALJ "did not

8   articulate any specific inconsistencies with the stated 'objective evidence of record' that would

9   warrant a virtual dismissal of the vocational evaluation reports."  (Doc. 15, 20:16-18.)

10      The Commissioner argues that the ALJ appropriately considered the vocational report.

11  Specifically, Mr. Rodarte concluded that Plaintiff did not "demonstrate the physical tolerances to

12  work as a painter" and that he did not think that Plaintiff had the ability to engage in competitive

13  employment.  The Commissioner argues that the ALJ appropriately refused to ascribe weight to an

14  opinion that is tantamount to opining that Plaintiff is disabled, which is a finding reserved to the

15  Commissioner alone.  Further, the ALJ explained that the report was inconsistent with the objective

16  record evidence.  (Doc. 18, 2:22.)

17      Pursuant to 20 C.F.R. § 404.1513(d), the ALJ must consider evidence from sources other

18  than the medical sources listed in Section 404.1513(a):

19      In addition to evidence from the acceptable medical sources listed in paragraph (a)
        of this section, we may also use evidence from other sources to show the severity of
20      your impairment(s) and how it affects your ability to work.  Other sources include,
        but are not limited to –

21

22      (1)     Medical sources not listed in paragraph (a) of this section (for example,
                nurse-practitioners, physicians' assistants, naturopaths, chiropractors,
                audiologists, and therapists);

23

24      (2)     Educational personnel (for example, school teachers, counselors, early
                intervention team members, developmental center workers, and daycare
                center workers);

25

26      (3)     Public and private social welfare agency personnel; and

27      (4)     Other non-medical sources (for example, spouses, parents and other
                caregivers, siblings, other relatives, friends, neighbors, and clergy).

28  *See also*, *id.* § 416.913(d)(1)-(4).

1    The opinion of an acceptable medical source is given more weight than that of an "other

2    source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

3    Nonetheless, the ALJ is required to "consider observations by non-medical sources as to how an

4    impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

5    1987).  An ALJ must give reasons germane to "other source" testimony before discounting it.

6    *Dodrill*, 12 F.3d at 919.

7    Here, Mr. Rodarte and Mr. Foster specifically opined how Plaintiff's low back impairment

8    affected his ability to work.  These vocational evaluators are "other source[s]," so the ALJ was

9    required to provide germane reasons for rejecting the vocational report.  The ALJ ascribed "little

10   weight" to the assessment of the vocational counselors' opinion that Plaintiff cannot engage in

11   competitive employment. (AR 29.) The ALJ noted that they were not medical sources, their opinion

12   is inconsistent with the objective evidence of record, and a finding of disability is a finding reserved

13   for the Commissioner.  (AR 29.)  The fact that the vocational counselors are not "medical sources"

14   is not a germane reason for rejecting the opinion, as the ALJ is required to consider the observations

15   of non-medical sources as to how an impairment affects claimant's ability to work.  *Sprague*,

16   812 F.3d at 1232. However, the ALJ may ascribe *less* weight to the opinion of a non-medical source

17   than that of a medical source.  20 C.F.R. §§ 404.1527, 416.927.  Here, several medical sources

18   opined that Plaintiff could perform medium work.  (AR 313-24 (Dr. Wakim, examining physician);

19   331-34 (Dr. Tran (examining physician); AR 335-41 (Dr. Nawar, non-examining physician); AR

20   373-79 (Dr. Khong, non-examining physician); 562-71 (Dr. Gurvey, non-examining physician ).)

21   The ALJ was entitled to ascribe less weight to a conflicting non-medical source opinion that Plaintiff

22   was not suited for competitive work.

23   The ALJ also gave less weight to the opinion of the vocational counselors because it was

24   inconsistent with the objective medical evidence in the record.  As discussed above, the ALJ set forth

25   a detailed discussion of the objective findings in the record, ultimately concluding that the findings

26   supported the opinions of the multiple reviewing and examining physicians that Plaintiff retained

27   the ability to perform medium work.  Inconsistency with the medical evidence is a germane reason

28   for discounting lay witness testimony.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

To the extent the ALJ rejected the vocational counselors' opinion as to the ultimate issue of disability because such an opinion is reserved only to the Commissioner, this too is a specific and germane reason to give the opinion less weight. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (medical source opinion that claimant is disabled concerns issue reserved to the Commissioner and therefore does not mean that the claimant will be found disabled); *see also Belthius v. Astrue*, No. C10-5587-TSZ, 2011 WL 861905, at *3 (W.D. Wash. Feb. 15, 2011) (ALJ properly assigned little weight to chiropractor's opinion that plaintiff was disabled because is concerned an issue reserved to the Commissioner).

In sum, the ALJ provided two specific and germane reasons to give little weight to the opinion of the vocational counselors, and the ALJ's consideration of this evidence was legally sufficient.

### 3.    The ALJ's Consideration of the Opinions of Drs. Tran, Nawar, and Wakim

Plaintiff asserts that the findings of Drs. Tran and Nawar, whose opinions the ALJ credited, are not supported by medically acceptable clinical and laboratory diagnostic techniques.  To the extent that Plaintiff argues the opinion of Dr. Nawar cannot constitute substantial evidence because he did not "evaluate the Plaintiff" or lay out any medically acceptable clinical laboratory diagnostic techniques, Plaintiff's argument is misplaced.

Dr. Nawar is a state agency non-examining physician who reviewed Plaintiff's medical records and provided an expert opinion regarding Plaintiff's physical functional abilities.  (AR 335-41.)  A State agency physician opinion can constitute substantial evidence so long as it is consistent with other evidence in the record. *Lester*, 81 F.3d at 830-31; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").  Here, Dr. Nawar's opinion is consistent with the opinions of examining physicians Drs. Tran and Wakim, as well as with that of Drs. Khong and Gurvey who reviewed Plaintiff's medical records.  Thus, it is consistent with other evidence of record and constitutes substantial evidence.

1    Plaintiff also argues that "Dr. Tran did not incorporate into her findings and conclusions any

2    reference of the diagnostic testing that was completed, specifically the positive MRI and EMG

3    findings as articulated in the earlier 'Review of Records' section of her report." (Doc. 15, 13:14-17.)

4    In the "Review of Records" section of Dr. Tran's report, she indicated review of an MRI scan

5    noting anulus fissuring with 3-4 mm broad-based disc protrusion at L4-L5, L5-S1. (AR 331.) Dr.

6    Tran also noted that EMG testing showed evidence of right L4-L5 nerve root irritation. (AR 331.)

7    As the Court understands Plaintiff's argument, Plaintiff contends that Dr. Tran's opinion should not

8    have been given any weight by the ALJ because Dr. Tran failed to discuss the MRI findings and the

9    EMG results. The ALJ is responsible for determining credibility, resolving conflicts in medical

10   testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. While

11   the Court is required to examine the record as a whole, it may neither reweigh the evidence nor

12   substitute its judgment for that of the Commissioner. *Thomas v. Barnart*, 278 F.3d 947, 954 (9th

13   Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the

14   Commissioner's conclusion that must be upheld. *Id.* While Dr. Tran did not discuss the implications

15   of the MRI or EMG findings, she noted that she had considered that evidence as well as x-ray results

16   on the day of examination, and her opinion was predicated on those records *and* the findings she

17   made on examination. (AR 330- 34.) The Court has no power to re-weigh Dr. Tran's opinion as

18   urged by Plaintiff. The ALJ has provided specific and legitimate reasons to discredit the conflicting

19   opinion of Dr. Teopenga, and Dr. Tran's opinion was predicated on her own examination findings

20   and was in agreement with the assessments of Drs. Wakim, Khong, and Gurvey, examining and non-

21   examining physicians, respectively.

22   Plaintiff also argues that Dr. Wakim's opinion should not have been given any weight by the

23   ALJ because his findings and conclusions do not comport with any treating source reports, his

24   opinion lacks "logical fluidity," and it "appears to be in conflict with the best interests of the

25   plaintiff." (Doc. 15, 14:18-16:8.)

26   The Commissioner argues that Plaintiff fails to articulate this argument meaningfully, and

27   merely expresses disagreement with Dr. Wakim's conclusions. The Commissioner notes that Dr.

28   Wakim diagnosed Plaintiff based on his physical examinations of Plaintiff as well as diagnostic test

1  results and articulated an objective basis for disagreeing with Dr. Black's opinion that Plaintiff had

2  severe functional limitations that prevented him from working.

3        Plaintiff's argument is essentially a request that the Court reweigh the medical evidence, and

4  arrive at a conclusion different from that of the ALJ.  The Court is not permitted to do so.  *Sandgathe*

5  *v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).  Although Dr. Black found that Dr. Wakim's

6  examination results were inconsistent with Dr. Wakim's opinion as to Plaintiff's residual functional

7  abilities, the ALJ gave a legally sufficient reason to discount Dr. Black's opinion.  Moreover, other

8  examining and non-examining physicians' opinions support Dr. Wakim's assessment of Plaintiff.

9  For example, Dr. Tran found that Plaintiff retained the ability to perform medium work based on her

10  examination findings and review of Plaintiff's records.  (AR 331-34.)  Drs. Nawar and Khong

11  reviewed Plaintiff's records and affirmed Dr. Tran's opinion.  (AR 334-41, 373-79.)  Finally, Dr.

12  Gurvey reviewed Plaintiff's records and answered specific interrogatories prepared by the ALJ.  Dr.

13  Gurvey concluded that Plaintiff had mild degenerative disc disease, but his medical history was one

14  of primarily subjective complaints of low back pain.  (AR 569-70.)  He noted that, while Plaintiff

15  had mild degenerative disc disease, his straight leg raising test was negative on three examinations.

16  (AR 570.)  He ultimately concluded that Plaintiff remained able to perform work in the medium

17  exertional category.  (AR 562.)  In sum, substantial evidence supports Dr. Wakim's ultimate opinion

18  as well as the ALJ's determination.  Even to the extent that Dr. Wakim's opinion may be reasonably

19  subject to a different rational interpretation based on Dr. Black's criticisms, the Court is not

20  empowered to re-weigh the evidence.  *Andrews*, 53 F.3d at 1041.

21  **B.**   **The ALJ Properly Considered Plaintiff's Lay Testimony**

22        Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discredit his

23  lay testimony regarding the pain he suffers as a result of his back impairment.  Plaintiff asserts the

24  ALJ based his credibility determination "in part, on the lack of consistent documentation of the

25  Plaintiff's reporting of pain."  Plaintiff argues that the medical records "are replete with notations

26  regarding complaints of pain, and the limiting effects of said pain, supported by objective medical

27  findings."  Plaintiff contends that the ALJ failed to state any specific, clear and convincing reasons

28  for rejecting Plaintiff's testimony regarding the severity of his pain.  (Doc. 15, 18:16-19:22.)

The Commissioner asserts that the ALJ provided several legally sufficient reasons for discounting Plaintiff's pain testimony including: (1) the objective medical evidence did not support the extent of Plaintiff's pain testimony; (2) the ALJ's own observations of Plaintiff's behavior at the hearing; and (3) Plaintiff's conservative treatment.  The Commissioner contends that while Plaintiff disagrees with the ALJ's interpretation of the evidence, the ALJ's interpretation is a rational one and as such, it is entitled to deference and must be upheld.  (Doc. 18, 14:18-15:23.)

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929.  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms.  (AR 20-21.)  Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and

1    convincing.  As discussed below, the Court finds that the ALJ gave clear and convincing reasons

2    supported by the record to discount Plaintiff's credibility.

3         The ALJ found Plaintiff's pain testimony not entirely credible because he has been prescribed

4    only conservative, non-invasive treatment.  (AR 31.)  An ALJ is permitted to consider the nature of

5    a claimant's treatment in assessing the claimant's credibility.  *Parra v. Astrue*, 481 F.3d 742, 750-51

6    (9th Cir. 2007) (stating that evidence of conservative treatment is sufficient to discount a claimant's

7    testimony regarding severity of an impairment); *see also Tommasetti*, 533 F.3d 1035, 1039 (9th Cir

8    2008) (stating that the ALJ's finding that plaintiff's favorable response to conservative treatment

9    including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical

10   nerve stimulation unit, and lumbosacral corset undermined plaintiff's reports regarding the disabling

11   nature of his pain was permissible); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting

12   subjective pain complaints where claimant stated she "experienced pain approaching the highest

13   level imaginable" as inconsistent with the minimal, conservative treatment that she received).

14        Here, Dr. Gurvey specifically opined that there was no indication for surgery or invasive

15   procedures by neurology, neurosurgery, or an orthopedic surgeon.  (AR 570.)  Additionally, Dr.

16   Gulaya recommended only "conservative chiropractic treatment," and prescribed Naprosyn, Robaxin,

17   and Darvocet. (AR 299.) While there is evidence that Plaintiff underwent epidural injections shortly

18   after his injury, treatment records do not reflect that continued epidural injections were warranted.

19   The Bakersfield Neuroscience & Spine Institute continued to refer Plaintiff to physical therapy as

20   the primary mode of treatment. (*See, e.g.,* AR 591.) Substantial evidence supports the ALJ's finding

21   that Plaintiff's treatment was primarily conservative in comparison to his subjective complaints of

22   pain.  This is a sufficient basis to reject pain testimony.

23        The ALJ also considered the lack of objective findings to support the degree of pain Plaintiff

24   alleged.  While a lack of objective medical findings may not constitute the *sole* reason to discredit

25   a claimant's lay testimony regarding pain, it is one factor among others the ALJ may consider.  *Burch

26   v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the

27   sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility

28   analysis."); *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (holding that ALJ's

rejection of pain testimony solely for lack of objective medical evidence corroborating it clear error). The ALJ fully discussed the mild nature of the objective medical findings and the ALJ did not err in considering the lack of corroborating objective medical evidence in assessing Plaintiff's credibility.

Finally, the ALJ was entitled to consider his own observations of Plaintiff from the hearing. *Drouin v. Sullivan*, 966 F.2d 1255, 1259 (9th Cir. 1992) (ALJ may properly rely on his own observations at the administrative hearing as one factor in support of an adverse credibility determination). The ALJ noted that while Plaintiff stood during the hearing, he displayed no overt pain behavior consistent with his allegations. (AR 31.) Taken together with the other factors, the ALJ was entitled to consider his own observations of Plaintiff. In sum, the ALJ stated clear and convincing reasons to support an adverse credibility determination.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff Jose Campos Soria.

IT IS SO ORDERED.

**Dated:    April 29, 2013                          /s/ Sheila K. Oberto**
                                             UNITED STATES MAGISTRATE JUDGE